FRANCES MARION SARSON

*v.*

JOHN SARSON.

[Decided July 16th, 1908.]

Petitioner's father, with whom petitioner and defendant lived as husband and wife, forbade defendant the house until he could support his wife, whereupon defendant left, telling petitioner he would send for her just as soon as he could support her. The parting between petitioner and defendant was affectionate, but not so with her father. Within two to four weeks thereafter, defendant wrote petitioner a friendly letter, and subsequently wrote two others, to none of which petitioner replied, on the advice of her father.—*Held*, not to show desertion by defendant.

On petition for divorce.

*Mr. Henry H. Fryling,* for the petitioner.

STEVENS, V. C.

This is an undefended suit for divorce on the ground of desertion. The parties were married on September 25th, 1901. The desertion is alleged to have occurred on June 17th, 1905, and the suit was begun on July 9th, 1907. It seems to me that on no reasonable view of the evidence can it be said that the desertion *began* on or prior to July 9th, 1905. The parties were, when they were separated, living at the home of Mr. Fowler, the wife's father. According to his and the petitioner's account, the defendant had lost his position and was addicted to drink. In June, 1905, Mr. Fowler told him that he would have to do something to support himself; that he (Fowler) wasn't going to take care of him any longer. He left two weeks thereafter. The parting of husband and wife was friendly; the parting with the father was "sulky." It is evident that there was a quarrel. Mr. Van Nalts testifies that defendant told him, in the course of a

conversation had in July, 1907, that when he left, his father-in-law told him "not to come back until he had made good."

After leaving the defendant wrote four letters: the first (which is not produced) from two to four weeks after the separation; the second, February 11th, 1906; the third, June 17th, 1906, and the last, July 1st, 1907. The three produced are friendly in tone, and the one of February 11th is especially so.

On her examination before the master the petitioner testified that she had lost the first letter. On her examination in open court she said that she had no recollection of losing any letter; that she thought that her counsel had them all. The omission to produce this letter is unfortunate. Written so soon after the separation, it would, in all probability, have thrown considerable light upon the attitude of the parties at that time. Anyone having much experience in the trial of this class of cases knows how important it is to have the correspondence, and particularly the letters written about the time of the separation. Such letters are, in general, a far more reliable index of the then situation than the oral evidence of the parties, and failure to produce them always gives rise to a suspicion that if produced they would not bear out the verbal statements.

The petitioner's testimony taken before the master not being entirely satisfactory, she was examined in open court. She then testified that she and her husband parted on friendly terms and that it was agreed (in the words of the witness) "that he would send for me just as soon as he could support me." It is more than likely that he considered himself forbidden the house. He did, however, write within two or three weeks from the time of leaving. She says the general trend of this letter was that things were looking better for him and that he hoped soon everything would be all right again. Now, one would have supposed that, in view of the friendly parting, petitioner would have answered this letter with words of encouragement, but she says that she talked the matter over with her mother and father and that they thought it was wise not to write; that she did not write, and that she has never written. The situation, then, was this: He was obliged to leave the house; he wrote to her and she

refused to answer his letters or to communicate with him in any way. How this could be desertion on the part of the husband I do not quite understand. The separation, certainly, was not, in the first instance, willful on his part, for he was compelled to leave by his father-in-law, and it was not obstinate in the sense that it was persisted in, against the efforts of the deserted party to bring it to an end. It is true that it has been held by our court of errors and appeals that a woman is not required to make such advances and concessions as a man is. The woman may be passive and yet deserted. It has, however, never been held that she may not only be passive, but that she may also repel the advances to her, and, refusing communication with her husband, still assert that the separation is against her will.

In no view of the case could the mere act of leaving the father's house be regarded as a desertion, for the wife says that when he left it was agreed that he would send for her as soon as he could support her.

Whether after the husband had had a reasonable time to obtain re-employment and to establish a new home, the situation underwent a change, I need not decide for it is obvious, that even if we leave out of view the conduct of the wife, a reasonable time had not elapsed prior to the beginning of the statutory period of two years.

The master in his report refers to *Coe* v. *Coe, 68 N. J. Eq. (2 Robb.) 157.* That case differs from this in two important particulars. In the first place, the husband left his wife of his own accord. In the second place, in the language of the vice-chancellor, "the attitude of the wife was not that of acquiescence in her husband's prolonged absence and neglect."